UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT JOHN STEUERNAGEL, JR.,

              Plaintiff,

v.                                                                                   Case No. 22-cv-0593-bhl

KILOLO KIJAKAZI,

              Defendant.

## DECISION AND ORDER

      Plaintiff Robert John Steuernagel, Jr. seeks the reversal and remand of the Acting Commissioner of Social Security's decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

      Steuernagel applied for DIB and SSI on October 24, 2019 and April 24, 2020, respectively, alleging a disability onset date of December 29, 1990. (ECF No. 11-3 at 15.) Steuernagel's claims were denied initially and on reconsideration, so he requested a hearing before an administrative law judge (ALJ). (*Id.*) The ALJ held three hearings in this case, in November 2020, March 2021, and July 2021. (*Id.* at 15, 36-67, 68-115, 116-159.) On August 18, 2021, the ALJ issued an unfavorable decision. (*Id.* at 30.) On March 21, 2022, the Appeals Council denied Steuernagel's request for review and this appeal followed. (*Id.* at 2.)

## FACTUAL BACKGROUND

      Robert Steuernagel was born on December 30, 1968 and at the time of the first hearing was fifty-one years old. (ECF No. 11-3 at 128.) He testified that he obtained a high school diploma and was enrolled in special education classes. (*Id.*) For the past twelve years, Steuernagel has lived in a condominium (owned by his parents) and does his own cooking, laundry and cleaning. (*Id.* at 129-30.) His only employment has been at his parents' metal-finishing company where his duties consisted of putting parts on racks, running errands in a pickup truck and cutting the grass. (*Id.* at 132.) Steuernagel testified that he would get frustrated at work and sometimes stay home

and not go into work. (*Id*. at 133.) Ultimately, he was fired by his brother-in-law who was the president of the company. (*Id*. at 134.)

The ALJ found Steuernagel had the following severe impairments: neurodevelopmental disorder/borderline intellectual functioning, an anxiety disorder, and a depressive disorder. (*Id.* at 18.) The ALJ found that despite claimant's intellectual functioning and disorders, he retained relatively good mental functioning. (*Id*. at 22.) During examinations, "the claimant was observed to be interactive, pleasant, polite, well-dressed, well kempt, and cooperative with appropriate mood and affect, logical and coherent thoughts and the ability to remain task oriented." (*Id*. at 22 (citing ECF No. 11-8 at 2-26, 27-104, 105-113).) The ALJ further found that Steuernagel had the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations, including but not limited to, restrictions to occupations that do not require complex written or verbal communications; simple, routine tasks; low stress, with only occasional decision making required; and only occasional changes in the work setting. (*Id*. at 20-21.) The ALJ found Steuernagel capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 30.) Therefore, the ALJ determined that Steuernagel was not disabled. (*Id*.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, the Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Steuernagel challenges the following aspects of the ALJ's decision: (1) the ALJ demonstrated bias in his handling of the hearing; (2) the ALJ improperly evaluated the opinion of claimant's retained medical expert; and (3) the ALJ improperly evaluated the opinion of claimant's treating psychologist, Sheila Gissible, Psy.D. None of these complaints establishes a basis for remand. The Acting Commissioner's decision will, therefore, be affirmed.

## I.     The ALJ Did Not Demonstrate Bias.

Steuernagel's first argument is that he did not receive a hearing before an impartial factfinder. In evaluating a claim that an ALJ was biased, the Court begins with the presumption that ALJs are impartial. *Martin v. Astrue*, 345 F. App'x 197, 202 (7th Cir. 2009). To overcome this presumption, "a claimant must show that the ALJ 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 556 (1994). The claimant fails to make the requisite showing.

On November 12, 2020, five days before the date of the first hearing scheduled for November 17, 2020, claimant's counsel informed the ALJ that Daniel Goeckner, Ph.D. would be testifying but would be available only from 2:00 p.m. to 2:30 p.m. (ECF No. 11-7 at 181.) It appears that technical difficulties prevented Dr. Goeckner from testifying, and the ALJ asked if "there was some reason [Dr. Goeckner] couldn't just file a report." (ECF No. 11-3 at 142.) The ALJ, however, scheduled a second hearing, held on March 9, 2021, and Dr. Goeckner presented live testimony. (*Id.* at 74-100.) From the outset, Dr. Goeckner's testimony was confusing, causing the ALJ to request clarification on the evidence and exhibit numbers to which Dr. Goeckner was referring. (*Id.* at 74-77.) The ALJ was informed that Dr. Goeckner never treated or interviewed Steuernagel. (*Id.* at 78.) He was called by claimant's counsel to opine on Steuernagel's "intellectual profile," and data generated by two doctors, Dr. Gissibl and Thomas S. Lehman, Ph.D. (ECF No. 11-3 at 78-81.) In response, the ALJ requested a foundation as to his testimony, and wondered why Dr. Goeckner's opinions had not been reduced to writing in the first instance so that the ALJ would know what he was going to say and then be in a position to ask any questions. (*Id.* at 80.) The ALJ questioned the relevancy of Dr. Goeckner's testimony as well as the appropriateness "particularly from someone who [hadn't] interviewed [the claimant]," and prohibited questions that called for a vocational conclusion. (*Id.* at 91-93.) At one point, the ALJ noted he would appreciate it if the claimant's attorney stopped interrupting or shouting at him,

seeming to indicate that it was claimant's attorney who was being less than professional. (*Id*. at 82.) At the conclusion of the hearing, the ALJ permitted Dr. Goeckner to submit a written report, which he did. (*Id.* at 99; ECF No. 11-8 at 205-207.)

In order to establish bias, a claimant is required to demonstrate that the ALJ displayed a "deep-seated and unequivocable antagonism that would render fair judgment impossible." *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (citation omitted). "[A]dverse ruling are not evidence of judicial bias." *Trask v. Rodriguez*, 854 F.3d 941, 944 (7th Cir. 2017). Based on the hearing transcript, there is not a sufficient basis to conclude that the ALJ was biased. It appears that the ALJ was simply (and repeatedly) attempting to understand the relevance of the testimony, focus the claimant's witness on relevant matters, and move the pace of the proceeding's second hearing to completion. Nothing the ALJ said or did demonstrated that he "had it in for [claimant] for reasons unrelated to the [ALJ's] view of the law*." Keith*, 473 F.3d at 789. Even if the ALJ's efforts at courtroom administration might be considered abrupt, stern or even short-tempered—to be clear the Court does not find that the ALJ's conduct constituted as much—such conduct would be insufficient to establish the requisite bias or partiality to overturn the results of a hearing. *See Liteky*, 510 U.S. at 555-56. The ALJ's questioning of Dr. Goeckner was reasonable and Steuernagel's claim that he did not receive a hearing before an impartial factfinder is without merit.

**II.     The ALJ Adequately Assessed Dr. Goeckner's Opinions.**

Steuernagel's next argument is that the ALJ's evaluation of Dr. Goeckner's opinion was faulty. ALJs do not "defer or give any specific evidentiary weight . . . to any medical opinion(s)." 20 C.F.R. §404.1520c(a). Instead, they analyze opinions by persuasive value according to several factors, the most important of which are supportability and consistency. *Id.* An opinion is more persuasive when supported by relevant objective medical evidence and explanations. *Id.* at (c)(1). Similarly, an opinion is worth more when consistent with evidence from other sources. *Id.* at (c)(2). An ALJ's assessment is sustained as long as it is minimally articulated and reasonable, even if another ALJ could have reached a different conclusion. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (Courts "uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") ; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (If an "ALJ discounts the physician's opinion after considering [the regulatory] factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that we have, in fact, deemed lax.") (internal quotations omitted).

Dr. Goeckner was a retained medical expert hired by claimant's counsel to review the psychological opinions of Drs. Gissible and Lehman and provide an opinion. (ECF No. 11-3 at 26.) He did not examine or treat Steuernagel and, in fact, never spoke to him. (*Id.* at 85.) The Seventh Circuit has held that "the mere fact that a medical opinion has been solicited to support a disability application is not a sufficient reason to ignore it." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). But the record confirms the ALJ did not ignore Dr. Goeckner's opinion or reject it based on the expert's financial motives as contended by the claimant. (ECF No. 21 at 16.) The ALJ evaluated Dr. Goeckner's opinion and found the opinion "unpersuasive" for number of articulated reasons. (ECF No. 11-3 at 26-27.) The ALJ was not persuaded by Dr. Goeckner's opinion because it was inconsistent with other evidence in the record, including the claimant's own reporting. (ECF No. 11-3 at 26.) Dr. Goeckner found that the claimant "most likely would not be able to make friends," but Steuernagel admitted to attending sporting events with friends. (ECF No. 11-8 at 207; ECF No. 11-3 at 25-26, 140.) Dr. Goeckner opined that Steuernagel would have "profound" concentration issues in the typical work environment, yet Steuernagel testified that he is able to cook, do laundry and clean his condo, attend sporting events, watch movies, go to strip clubs, and provide care over weekends for his autistic nephew. (ECF No. 11-8 at 207; ECF No. 11-3 at 129-131, 139-41). During the hearing, Dr. Goeckner testified that it would be "very difficult" for someone with claimant's test scores to operate a car in a safe way, and yet, Steuernagel testified that he regularly drove his car to his mother's home and before the pandemic regularly drove to restaurants and bars on the weekend. (ECF No. 11-3 at 90, 135.) ALJs are directed to evaluate the consistency of medical opinions with the record. 20 C.F.R. §404.1520c(c)(2). It was reasonable for the ALJ to conclude that Dr. Goeckner's opinion was not persuasive given his faulty characterizations of other evidence in the record.

The ALJ further noted that Dr. Goeckner incorrectly stated both doctors found that Steuernagel gave good effort during the examination when Dr. Gissible particularly noted that Steuernagel did not give good effort during the testing. (ECF No. 11-3 at 26.) Steuernagel contends that the ALJ failed to read Dr. Goeckner's statement in context. (ECF No. 21 at 17.) The full sentence reads: "The two previously administered tests were consistent in terms of their results, both psychologists reported that Mr. Steuernagel had provided good effort during the testing sessions, and neither psychologist noting any indications of malingering." (ECF No. 11-8 at 205.) Steuernagel contends that Dr. Goeckner is discussing "good effort" as a test of whether

or not Steuernagel was "malingering." (ECF No. 21 at 18.) Dr. Gissible, however, reported that Steuernagel "did not appear to give his best efforts on all testing sections," (ECF No. 11-8 at 20), reasonably calling into question her conclusions based on the testing. The ALJ was justified in discounting Dr. Gissible's testing results and Dr. Goeckner's opinion of those results that failed to acknowledge Steuernagel had not exerted his best effort. Although it is possible that opposing conclusions can both be supported by substantial evidence, it is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The ALJ also found Dr. Goeckner's opinions to be "vague," particularly those referencing claimant being "'significantly behind' the average employee." (ECF No. 11-3 at 26.) For all these reasons, the ALJ's determination that Dr. Goeckner's opinion was not persuasive was reasonable and does not warrant remand.

### III. The ALJ Adequately Assessed Dr. Gissible's Opinions.

In June 2019, Dr. Gissible conducted a psychological evaluation of Steuernagel. As previously noted, she found that Steuernagel "did not appear to give his best effort on all testing sections, and frequently gave up due to frustration." (ECF No. 11-8 at 20). She also indicated that Steuernagel demonstrated attention and concentration for the length of the testing, displayed logical and coherent thoughts, and "remained task oriented at all times." (*Id.*) Dr. Gissible also noted that Steuernagel's "lack of effort contribute[d] to his poor performance and is likely a typical approach." (*Id.* at 21.) One of Dr. Gissible's recommendations included referral to the Department of Vocational Rehabilitation if Steuernagel should decide to pursue employment. (*Id.* at 22.) Dr. Gissible treated Steuernagel in individual therapy from June 27, 2019 to November 22, 2019. (*Id.* at 203.)

On September 24, 2020, Dr. Gissible filled in a check-box form where she found claimant had unlimited ability to understand, remember, and carry out very short and simple instructions; moderate limitations to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (*Id.* at 204.) Dr. Gissible also found marked limitations in claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting

them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (*Id.*) She deemed Steuernagel's prognosis as poor for returning to competitive employment. (*Id.*)

The ALJ expressed concern with the opinion as Dr. Gissible failed to provide an explanation for the degree of limitations she opined and "did not include a statement of when any of these limitations might have started." (ECF No. 11-3 at 25.) He explained that in June of 2019, when Dr. Gissible first met with Steuernagel, there was no indication that these marked limitations were present and in fact, Dr. Gissible recommended a referral to the Department of Vocational Rehabilitation if Steuernagel decided to purse employment and opined "a reasonably good prognosis" if he engaged in treatment. (*Id.* at 11-8 at 22.) The ALJ also noted that Dr. Gissible's marked limitations were overall inconsistent with Steuernagel's activities and functioning in the real world, such as going to sporting events with friends and family, taking care of his autistic nephew, and driving.

The ALJ's treatment of Dr. Gissible's opinions offers no basis for finding error. An ALJ may discount an opinion that is inconsistent with a claimant's daily activities. *See Gebauer v. Saul*, 801 F. App'x 404, 409-10 (7th Cir. 2020) (affirming an ALJ who discounted a physician opinion in part because it was inconsistent with the claimant's daily activities). Steuernagel's daily activities cut against the marked or extreme limitations opined by Dr. Gissible and as the ALJ noted, there was no supporting explanation as to why Steuernagel had such extreme limitations. (ECF No. 11-3 at 25.) "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C. F.R. §404.1520(c)(2). The ALJ has "'final responsibility' for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). The claimant has failed to show that the ALJ erred in considering Dr. Gissible's opinions.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on July 24, 2023.

                                                  s/ *Brett H. Ludwig*
                                                  BRETT H. LUDWIG
                                                  United States District Judge